OPINION
{¶ 1} Defendant, Raham Twitty, appeals from his conviction and sentence for multiple criminal offenses arising out of the shooting of Dayton Police Officer Mary Beall.
 {¶ 2} On the afternoon of May 15, 2000, as Defendant was driving his girlfriend, Kia Richardson, and her four year old daughter, Rickia Woods, to their home on Kipling Drive in Dayton, Defendant received a call from his aunt who wanted to be picked-up. Defendant dropped Kia Richardson and Rickia Woods off some two or three blocks from their home, and they walked the rest of the way.
 {¶ 3} As Kia Richardson and her daughter walked home, Richardson noticed Defendant standing outside in front of the house, holding a red backpack in which he kept a gun. Defendant pulled the gun out of the backpack, approached Richardson, and said: "Do you want me to spray your ass?" Richardson believed that Defendant was threatening to shoot her, and she immediately grabbed her daughter's hand and began running down the street, screaming for help. As they were running Richardson heard a gunshot.
 {¶ 4} A neighbor living down the street from Richardson, John Marks, was standing outside talking to another man and they also heard the gunshot. Richardson and her daughter ran to Marks' location, yelling for help. By now Defendant had gotten into his vehicle and was pursuing Richardson down the street. Defendant pulled up next to Richardson, got out of his vehicle, pointed a gun directly at Richardson and said: "Where are you going to go now," or "What are you going to do now, bitch." Defendant then drove off, leaving Richardson holding her daughter, who by now was crying hysterically.
 {¶ 5} John Marks offered safe shelter to Richardson and her daughter and inquired whether either of them had been shot. Mr. Marks then went inside his home and called police. Richardson and her daughter continued walking down the street. They were eventually picked-up by police and put in the back seat of a police cruiser operated by Officers Pyburn and Shirk. Richardson and her daughter were very upset and frightened, and the child was visibly shaking.
 {¶ 6} When Kia Richardson saw Defendant drive past the police cruiser, she screamed "that's him," and she pointed at Defendant's vehicle. Richardson and her daughter then dove onto the floor of the cruiser. Officer Pyburn radioed for assistance and began to follow Defendant's vehicle. Near Fairview Middle School, another police cruiser operated by Officers Smiley and Beall encountered Defendant's vehicle. They activated their emergency lights and began pursuing Defendant, who refused to stop. After Officers Pyburn and Shirk stopped briefly to let Kia Richardson and her daughter out of the cruiser, they joined in the chase of Defendant's vehicle.
 {¶ 7} Defendant continued to flee from police until he reached his mother's home on Kensington Avenue. Defendant pulled into the driveway, and Officers Smiley and Beall parked their cruiser behind Defendant's vehicle. Defendant exited his vehicle, as did Officers Smiley and Beall. Defendant immediately pointed a gun at the officers, and they in turn drew their weapons and pointed them at Defendant. A standoff then ensued between Defendant and the officers, with each demanding that the other put down their gun.
 {¶ 8} Eventually, in an attempt to diffuse the situation and obtain Defendant's cooperation, Officer Beall put her gun down and raised both hands in a surrender position. Defendant responded by shooting Officer Beall in the neck, leaving her permanently paralyzed. After shooting Officer Beall, Defendant pointed his gun at Officer Smiley who then shot Defendant.
 {¶ 9} Defendant was subsequently indicted on one count of carrying concealed weapons, R.C. 2923.12(A), three counts of felonious assault, R.C. 2903.11(A)(2), one count of child endangerment, R.C. 2919.22(B)(2), one count of failure to comply with an order or signal of a police officer, R.C. 2921.331(B),(C)(4), two counts of aggravated robbery, R.C.2911.01(B), one count of having weapons while under a disability, R.C.2923.13(A)(3), and one count of unlawful possession of a dangerous ordnance, R.C. 2923.17(A). A six year automatic firearm specification, R.C. 2941.144, was attached to all charges except for carrying concealed weapons and having weapons while under disability.
 {¶ 10} This matter proceeded to a jury trial. During the trial Defendant pled guilty to having weapons while under disability. The jury found Defendant guilty of all other charges and specifications. After merging some of the firearm specifications, the trial court sentenced Defendant to consecutive terms of imprisonment totaling fifty-eight years on the various offenses, plus an additional eighteen years on the firearm specifications, for a total of seventy-six years imprisonment.
 {¶ 11} Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 12} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL THROUGH ADMISSION OF INADMISSIBLE HEARSAY EVIDENCE."
 {¶ 13} Defendant claims that the testimony given by Maime Jackson, who related a conversation she overheard between Defendant and his mother, was inadmissible hearsay.
 {¶ 14} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the exceptions to the rule against hearsay. Evid.R. 802, 803, 804; State v. Steffen
(1987), 31 Ohio St.3d 111.
 {¶ 15} A trial court has broad discretion in admitting or excluding evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court will not disturb the trial court's decision. State v. Issa,93 Ohio St.3d 49, 64, 2001-Ohio-1290. An abuse of discretion means more than just an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 16} Maime Jackson testified at trial about a conversation she overheard on May 15, 2000, at around 3:00 p.m. The participants were Defendant and his mother, Wilma Twitty. Ms. Jackson testified she heard a noise and then heard Ms. Twitty ask, "You did what? You shot who?" Defendant replied, "I don't care, momma. She made me mad. She made me mad." Ms. Twitty then said, "I didn't teach you to shoot no baby and no girl. You know better than that." Defendant responded, "I know, momma. But she made me mad. She made me mad." Defendant then said, "I think they called the cops," to which his mother replied, "You know they did, dumb ass." Finally, Defendant remarked, "[W]ell, I'm not going to jail . . . they are just going to have to take me out."
 {¶ 17} Defendant timely objected to the admission of this testimony, but the trial court overruled those objections. Defendant now argues on appeal that Maime Jackson's testimony was inadmissible hearsay that prejudiced him because it implied that Defendant had confessed to his mother shooting at Kia Richardson and her daughter, Rickia Woods. Thus, Defendant claims that the trial court abused its discretion and denied him a fair trial when it admitted Jackson's hearsay testimony.
 {¶ 18} With respect to the questions that Defendant's mother asked Defendant, "You did what? You shot who?", because a question by its very nature cannot be offered to prove the truth of the matter asserted, questions do not constitute hearsay as defined by Evid.R. 801. State v.Carter, 72 Ohio St.3d 545, 1995-Ohio-104. Thus, it was not improper to allow Ms. Jackson to testify about the questions that Wilma Twitty asked Defendant.
 {¶ 19} With respect to the statements made by Defendant's mother during her conversation with Defendant, we first note that these statements constitute hearsay only if they were offered to prove the truth of the matters asserted in those statements. If those statements were offered for some other purpose, they are not inadmissible hearsay.State v. Davis (1991), 62 Ohio St.3d 326, 344.
 {¶ 20} During their conversation, Defendant's mother said to Defendant: "I didn't teach you to shoot no baby and no girl. You know better than that." The State argues, and we agree, that these statements were not offered to prove the truth of the matters they asserted: that Defendant's mother had not taught Defendant to shoot children or women, and that Defendant knew better than to do that. While it may reasonably be inferred that these statements by Defendant's mother were prompted by Defendant's admission that he shot at Kia Richardson and her child, that is not the matter asserted in Ms. Twitty's statements. Likewise, when Defendant said: "I think they called the cops," to which his mother replied: "You know they did, dumb ass", these statements by Defendant's mother were not offered to prove the truth of the matters they asserted: that Defendant knew "they" (other people) had called the police, or that Defendant was a "dumb ass."
 {¶ 21} The statements made by Defendant's mother were offered by the State to prove that Defendant had confessed to his mother shooting at Kia Richardson and her daughter. Thus, because those statements were offered for a purpose other than to prove the truth of the matters they asserted, they were not hearsay and the trial court properly allowed Ms. Jackson to testify about them.
 {¶ 22} Additionally, the statement made by Defendant's mother: "I didn't teach you to shoot no baby and no girl," to which Defendant replied: "I know momma. But she made me mad. She made me mad," does not constitute hearsay for another reason. It is a statement which Defendant expressly adopted and manifested his belief in its truth. Thus, it qualifies as an adoptive admission by Defendant. Evid.R. 801(D)(2)(b); Weissenberger, Ohio Evidence (2002), at p. 355.
 {¶ 23} Finally, with respect to the statements made by Defendant during his conversation with his mother, Evid.R. 801(D)(2)(a) provides:
 {¶ 24} "(D) Statements which are not hearsay. A statement is not hearsay if:
 {¶ 25} "* * *
 {¶ 26} "(2) Admission by party-opponent. The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity."
 {¶ 27} Defendant's own statements, when viewed in their proper context as responses to the questions and statements made by his mother, give rise to a reasonable inference that Defendant admitted to his mother that he shot at Kia Richardson and her daughter, Rickia Woods. These statements are clearly not hearsay because they were offered against Defendant and were his own statements. Thus, they constitute an admission by a party opponent. Evid.R. 801(D)(2)(a). The trial court did not abuse its discretion in allowing Ms. Jackson to testify about the conversation she overheard between Defendant and his mother.
 {¶ 28} Defendant additionally complains that the prosecutor engaged in misconduct by repeatedly referring to Ms. Jackson's hearsay testimony during his closing argument. First, we note that Defendant failed to object to the prosecutor's remarks in closing argument, thereby waiving all but "plain error." State v. Bey, 85 Ohio St.3d 487, 494,1999-Ohio-283. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been different. State v. Wickline (1990), 50 Ohio St.3d 114. With respect to prosecutorial misconduct, the test is whether the remarks or conduct were improper and, if so, whether it prejudicially affected substantial rights of the defendant. State v. Hartman, 93 Ohio St.3d 274, 294,2001-Ohio-1580; State v. Lott (1990), 51 Ohio St.3d 160, 165.
 {¶ 29} As we discussed, the testimony by Maime Jackson relating the conversation she overheard between Defendant and his mother was not hearsay. Thus, the prosecutor's references to Jackson's testimony during his closing argument was not improper. The prosecutor argued to the jury that Jackson's testimony demonstrated that Defendant had admitted to his mother shooting at Kia Richardson and her child, which along with Richardson's testimony and some other evidence, was sufficient to prove that Defendant committed felonious assault and child endangerment as charged in counts two and three of the indictment. Defendant had earlier disputed during his closing argument whether the state had proved his guilt on those offenses. We see no error, much less plain error.
 {¶ 30} Defendant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 31} "APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL THROUGH PROSECUTORIAL MISCHARACTERIZATION OF EVIDENCE."
 {¶ 32} Defendant complains of prosecutorial misconduct occasioned by the mischaracterization of certain testimony under the guise of asking a question, which Defendant alleges suggested evidence favorable to the State that was not in the record.
 {¶ 33} Kia Richardson testified that as she and her daughter were running away from Defendant, fleeing down the street, she heard a gunshot. Richardson admitted that she was not looking at Defendant when she heard the gunshot. Subsequently, the prosecutor asked:
 {¶ 34} "Q. Okay. You have previously testified
that you were walking to your home when the defendant approached you with the gun and fired at you. Is that correct?
 {¶ 35} "A. Yes. Correct." (T. 106).
 {¶ 36} Defendant alleges that the prosecutor's question mischaracterized Richardson's earlier testimony and presented an assertion of fact to the jury that there was no evidence to support; that Defendant had fired a gun at Richardson. According to Defendant, no witness testified at trial that he or she saw Defendant shoot at Richardson. Therefore, according to Defendant, putting that proposition before the jury when there was no evidence to support it misled the jury and deprived Defendant of a fair trial because it went to the very essence of the charge that Defendant committed felonious assault upon Kia Richardson.
 {¶ 37} In State v. Hunt (1994), 97 Ohio App.3d 372, 375, the Court of Appeals observed:
 {¶ 38} "In the present case, the prosecuting attorney presented damaging facts to the jury under the guise of asking appellant a question. In State v. Daugherty (1987), 41 Ohio App.3d 91, 534 N.E.2d 888, the Stark County Court of Appeals found this method of eliciting evidence to be highly improper and unprofessional. Specifically, the court stated as follows:
 {¶ 39} "[I]t is highly improper for any lawyer in the trial of any jury case, civil or criminal, to make what amounts to testimonial assertions under the pretext that he is merely `asking a question.' Secondly, it is unprofessional to put before a jury, under the pretext of asking questions, information that is not in evidence." Id., pp. 92-93.
 {¶ 40} At the outset we note that Defendant failed to object to the prosecutor's question. Accordingly, Defendant has waived all but "plain error," and he cannot prevail unless he demonstrates that but for the prosecutor's improper question, the outcome of his trial would clearly have been different. State v. Jones, 91 Ohio St.3d 335, 352,2001-Ohio-57; State v. Wickline, supra.
 {¶ 41} Kia Richardson testified that as she and her four year old daughter walked home, Defendant confronted them in front of their house. Defendant had a backpack from which he removed a gun. While brandishing that gun, Defendant asked Kia Richardson if she wanted him to "spray her ass." Kia Richardson testified that what Defendant meant was did she want Defendant to shoot her. Richardson grabbed her daughter and immediately began running down the street, away from Defendant, screaming for help. While fleeing, Richardson heard a gunshot.
 {¶ 42} Richardson continued running toward some neighbors who were standing outside, screaming for them to help her. One of those neighbors who also heard the gunshot, John Marks, asked Richardson whether she or her daughter had been shot. Marks also invited Richardson to come inside his home for safety. Meanwhile, Defendant pursued Richardson down the street in his vehicle. When he caught up with her, Defendant got out of his car, pointed his gun directly at Richardson, and said "What are you going to do now, bitch."
 {¶ 43} Subsequently, Defendant drove off and went to his mother's residence where he had a conversation with her about this incident. As we noted in overruling Defendant's first assignment of error, one may reasonably infer that during his conversation with his mother, Defendant admitted shooting at Kia Richardson and her child.
 {¶ 44} In light of this evidence we do not agree with Defendant that the prosecutor's question that indicated that Defendant shot at Richardson amounted to a factual assertion for which there was no evidentiary support in the record. Moreover, given the overwhelming evidence of Defendant's guilt on this felonious assault charge, we clearly cannot say that but for the prosecutor's question now being challenged, the outcome of Defendant's trial clearly would have been different. No error or plain error has been demonstrated.
 {¶ 45} Defendant makes an identical complaint of prosecutorial misconduct with respect to questions posed to another witness. John Marks was Kia Richardson's neighbor. Marks was standing outside talking to another man when Richardson and her daughter came running up the street screaming for help. Marks testified:
 {¶ 46} "Witness: Well, at that time we were standing there holding a conversation. And I heard a gunshot. And we were standing there in conversation. Said well, I hope that is kids playing with firecrackers. And that's what we had said. But I heard a gunshot." (T. 112).
 {¶ 47} Subsequently, the prosecutor asked:
 {¶ 48} "Prosecutor: All right. So you hear a gunshot. And are you outdoors? . . .
 {¶ 49} "Prosecutor: All right. And you hear a gunshot. You're thinking firecrackers, Do you look around?
 {¶ 50} "Witness: Yes, I do.
 {¶ 51} "Prosecutor: Do you look up? And what do you see right after you heard the gunshot which you thought were firecrackers? And what do you see?" (T. 112-113).
 {¶ 52} Defendant argues that under the guise of asking a question, the prosecutor mischaracterized Marks' testimony and misled the jury by indicating that Marks heard a gunshot when, in fact, what Marks heard was simply a noise that he equated with firecrackers. We disagree. Mark testified that he heard a gunshot. The prosecutor may have seized on Mark's statement to hammer home the point, but no undue prejudice is demonstrated. Moreover, Defendant failed to object to any of these questions the prosecutor asked John Marks. Defendant has failed to demonstrate any error, much less plain error.
 {¶ 53} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 54} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL THROUGH THE STATE'S MISSTATEMENT OF EVIDENCE DURING OPENING AND CLOSING ARGUMENTS."
 {¶ 55} ndant complains that the prosecutor engaged in misconduct by misstating the evidence during his closing argument.
 {¶ 56} test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Lott, supra. Prosecutorial misconduct does not warrant a reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19;State v. Keenan (1993), 66 Ohio St.3d 402.
 {¶ 57} In State v. Treesh, 90 Ohio St.3d 460, 466, 2001-Ohio-4, the Ohio Supreme Court stated:
 {¶ 58} "We have previously held that the prosecution is entitled to a certain degree of latitude in summation. State v. Grant (1993),67 Ohio St.3d 465, 482, 620 N.E.2d 50, 68; State v. Liberatore (1982),69 Ohio St.2d 583, 589, 23 O.O.3d 489, 493, 433 N.E.2d 561, 566. The prosecutor may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument. Statev. Smith (1997), 80 Ohio St.3d 89, 111, 684 N.E.2d 668, 689. We view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial. State v. Moritz (1980),63 Ohio St.2d 150, 157, 17 O.O.3d 92, 97, 407 N.E.2d 1268, 1273."
 {¶ 59} Defendant first complains that the prosecutor misstated the evidence by repeatedly stating during closing argument that Defendantshot at Kia Richardson. According to Defendant, this misled the jury because the evidence presented did not show that he shot at Richardson.
 {¶ 60} First, we note that Defendant failed to object to any of the prosecutor's remarks about which he now complains. Accordingly, Defendant has waived all but "plain error." State v. Jones, supra; Statev. Wickline, supra.
 {¶ 61} In overruling Defendant's second assignment of error, we concluded that the circumstantial evidence in this case, when viewed in its totality, is sufficient to support a reasonable inference that Defendant fired his gun at Kia Richardson. Thus, the prosecutor's remarks to that effect during closing argument were not improper. No error, much less plain error, has been demonstrated.
 {¶ 62} Next, Defendant claims that the prosecutor misstated the evidence during his closing argument by indicating that Defendant said to Kia Richardson: "I'll spray your ass." According to Defendant, Kia Richardson testified that what Defendant said to her was: "Do you want me to spray your ass," which meant did she want Defendant to shoot her. Defendant argues that this semantical difference is critical because Defendant did not indicate that he definitely intended to shoot Richardson, only that he might do so.
 {¶ 63} Defendant did not object to these remarks by the prosecutor. Therefore, we will review this claim only for "plain error." The question that Defendant posed to Kia Richardson while brandishing a gun, "do you want me to spray your ass," obviously conveyed a threat to shoot Richardson. In light of the other evidence in this case which, as we discussed, gives rise to a reasonable inference that Defendant fired his gun at Richardson, the prosecutor's reference in closing argument to Defendant's threat to shoot Richardson in the form of a declarative statement rather than as a question was not improper or misleading. We see no error, much less plain error.
 {¶ 64} Finally, Defendant claims that the prosecutor misstated the evidence during closing argument when he remarked that Officer Beall almost died in the street in the arms of her fellow officer. According to Defendant, the evidence does not demonstrate that Officer Beall almost died at the shooting scene in the arms of her partner, Officer Smiley.
 {¶ 65} Once again, Defendant did not object to the prosecutor's remark, invoking a "plain error" standard of review. Officer Beall testified about the grave gunshot injuries she suffered. After Defendant shot her in the neck, Beall lost a large amount of blood while lying in the street. Beall also lost all feeling in her hands and legs, and she "felt herself going," and asked her fellow officers on the scene to tell her husband and children that she loved them. Officer Beall clearly believed she was going to die. Officer Smiley, who was holding Beall's hand while waiting for the paramedics to arrive, also believed that Officer Beall was dying.
 {¶ 66} Given this evidence, the prosecutor's remark during closing argument that Officer Beall almost died at the scene was not improper. Once again Defendant has failed to demonstrate any error, let alone plain error.
 {¶ 67} Defendant's third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 68} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL, AS HIS TRIAL WAS SATURATED WITH EMOTION WHICH THE STATE MANUFACTURED AND EXPLOITED DURING TRIAL."
 {¶ 69} Defendant continues his theme of prosecutorial misconduct, arguing that the prosecutor saturated this trial with emotion and then exploited that atmosphere to inflame the passions and sympathy of the jurors.
 {¶ 70} Defendant claims that the prosecutor made numerous remarks during his closing argument that improperly appealed to the juror's emotions. Defendant failed to object, however, to any of those remarks, thereby waiving all but "plain error." State v. Jones, supra. We have examined each of the challenged remarks and conclude, in light of the overwhelming evidence of Defendant's guilt, that none of the remarks had any arguable effect on the outcome of Defendant's trial. Even absent these remarks, the jury would clearly have found Defendant guilty. Plain error has simply not been demonstrated.
 {¶ 71} With respect to closing argument, Defendant complains because the prosecutor urged the jury to "do justice," and stated that the victims in this case and the people of Ohio deserve justice. Those remarks are not improper. State v. Slagle (1992), 65 Ohio St.3d 597,612. The prosecutor did not call for a conviction to meet some public demand. Moreover, he also told the jurors in this case not to convict Defendant based upon sympathy for the victims, but to decide the case based upon the facts and law.
 {¶ 72} Defendant additionally complains that during closing argument the prosecutor characterized Officer Beall's conduct in coming into court and testifying about the gunshot injuries she received as "brave and courageous"; the prosecutor reminded jurors about Officer Beall's testimony that as she lay wounded in the street and "felt herself going," she asked her fellow officers to tell her husband and children that she loved them; the prosecutor described Defendant's conduct in shooting Officer Beall who was unarmed as "cold and callous"; the prosecutor reminded jurors that one witness testified that when he saw Defendant shoot Officer Beall, "he thought he took her head off"; and the prosecutor repeatedly mentioned that when Defendant shot at Kia Richardson, her four year old daughter was right beside her.
 {¶ 73} All of these remarks were proper because they accurately reflect the testimony presented at trial and they constitute fair comment upon that evidence. Prosecutors are entitled in closing argument to some latitude as to what the evidence presented has shown. State v. Ballew,76 Ohio St.3d 244, 1996-Ohio-81. No error, much less plain error, has been demonstrated with respect to the State's closing argument.
 {¶ 74} Defendant further claims that the prosecutor inflamed the passions of the jury by eliciting certain highly emotional testimony from Officer Mary Beall. Specifically, Defendant complains about testimony describing the extent of Beall's injuries, her requests to her follow officers on the scene to tell her husband and children that she loved them in anticipation that she might die from her injuries, the response given by Beall's fellow officers to that request, and Beall's description of how her injuries have permanently affected her life and her relationship with her family.
 {¶ 75} First, we note that Defendant failed to object to any of this testimony, thereby waiving all but plain error. Furthermore, the prosecutor's questions that elicited this highly emotional testimony was not improper, to the extent that this evidence was relevant and offered to prove that Officer Beall suffered "serious physical harm," which elevated the degree of the felonious assault charge against Defendant. R.C. 2903.11(D). This court is aware, however, that some of the highly emotional testimony elicited from Officer Beall was unnecessary in relation to the charges the State had undertaken to prove.
 {¶ 76} The felonious assault charge, in order to constitute a first degree felony, required the State to prove that Defendant caused "serious physical harm" to Officer Beall. Any physical harm that results in permanent incapacity constitutes serious physical harm. R.C.2901.01(A)(5)(c). Obviously, the fact that this shooting left Officer Beall paralyzed and in a wheelchair amply demonstrates that Defendant caused Officer Beall serious physical harm. Therefore, some if not much of the emotional testimony elicited from Officer Beall constitutes evidence which is unnecessary, cumulative, and subject to exclusion if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). Had Defendant timely objected to this inflammatory evidence at trial or had raised the issue before trial via a liminal motion, the court should have limited it. Nevertheless, given the overwhelming evidence of Defendant's guilt, we cannot say that but for the admission of the highly emotional testimony from Officer Beall, the outcome of this trial clearly would have been different. No plain error is demonstrated.
 {¶ 77} Defendant additionally argues that the prosecutor improperly appealed to the jury's emotions by questioning Officer Beall about the black band she wore over her police badge at the time of this shooting. After exhibiting to the jury her bloody police uniform shirt with her badge still attached, Officer Beall testified that the black band was intended to commemorate police memorial week and pay tribute to those officers who had died in the line of duty. Once again Defendant failed to object to this testimony at trial, waiving all error except plain error. Even assuming arguendo that this testimony was irrelevant, inflammatory, and should have been excluded, Evid.R. 403, given the overwhelming evidence of Defendant's guilt we are not persuaded that this testimony affected the outcome of Defendant's trial. No plain error has been demonstrated.
 {¶ 78} Defendant also complains that the prosecutor unfairly appealed to the jury's emotions by the dramatic way in which certain evidence was displayed. Specifically, the prosecutor asked one of the police evidence technicians to line up on the bar of the witness stand the twenty-eight rounds of live ammunition removed from Defendant's gun after his arrest. Defendant failed to object to this demonstration, however, thereby waiving all but plain error. This evidence, the twenty-eight rounds of live ammunition, was admitted into evidence at Defendant's trial without objection. Thus, the prosecutor cannot be said to have acted improperly in displaying to the jury in this way evidence which was admitted as an exhibit. We see no error, much less plain error.
 {¶ 79} Next, Defendant complains because Officer Beall cried on the witness stand while describing the shooting, the injuries she sustained, and their permanent life changing consequences. Defendant also complains because two other officers who witnessed the shooting of Officer Beall, Officers Smiley and Pyburn, likewise cried on the witness stand while describing these events.
 {¶ 80} First, we note that Defendant failed to object. Thus, we will review this claim only for plain error. Second, it is clear from the record that the prosecutor did nothing to prompt or elicit these emotional displays by the witnesses. They were close to Officer Beall and could be expected to be affected emotionally by her plight. Thus, this claim of error by Defendant does not implicate any conduct or actions on the part of the prosecutor, and therefore cannot constitute prosecutorial misconduct, which is the claim that Defendant presents. For this reason alone, this claim of error lacks merit.
 {¶ 81} In a trial with tragic facts such as these, emotions are a natural, expected, and unavoidable product of Defendant's conduct and the witnesses' attempts to describe for the jury what they observed. There is nothing in this record which demonstrates that these jurors were adversely affected in any way by the emotional displays of the witnesses, that is, led to put the facts aside and react instead to emotion. No error, much less plain error, has been demonstrated.
 {¶ 82} Defendant further complains because some people who watched television news coverage about this trial noticed that the trial judge appeared to wipe a tear from her eye at the conclusion of Officer Beall's testimony. Once again, because this claim by its very nature does not implicate any misconduct on the part of the prosecutor, which is how the claim is presented, it lacks merit.
 {¶ 83} Moreover, the trial record demonstrates that none of the attorneys in the courtroom who were trying this case even noticed the judge's actions. When this matter was brought to the attention of the trial judge, she acknowledged that the motion she made in removing a single tear from the corner of her eye was a small one, and that she was "not crying." No request was made by Defendant to voir dire the jury, and there is nothing in this record to indicate that any of the jurors even took note of the trial judge's actions, much less that they were adversely affected by it. Additionally, the trial judge instructed the jury to disregard anything the court might have said or done that they believed reflected the court's opinion about this case.
 {¶ 84} In view of these facts and circumstances, the trial court judge concluded that her actions "did not affect anything" and denied Defendant's request for a mistrial. We agree. Defendant has failed to demonstrate that his right to a fair trial was adversely affected by the trial judge's conduct. Accordingly, the trial court did not abuse its discretion in overruling Defendant's request for a mistrial. State v.White, 85 Ohio St.3d 433, 440, 1999-Ohio-281.
 {¶ 85} Defendant's final complaint in this assignment of error concerns the fact that at one point during the trial the courtroom was packed with police officers, apparently in anticipation of Officer Mary Beall taking the witness stand. Defendant brought the matter to the attention of the trial judge, noting that every seat in the spectator section was filled and there were four or five uniformed officers standing by the door because they had no place to sit. Defendant requested that the courtroom be cleared of anyone who did not have a seat. In denying Defendant's request, the trial court noted that this was a public trial which anyone could attend, and that nobody had been disruptive.
 {¶ 86} Trials are public, but these officers were not present in these numbers simply out of interest. They were there to show their support for Officer Beall and their sympathy for the grievous injuries she suffered in the line of duty. By extension, they were also giving witness to the risks to which all officers submit while on duty. The officers' motives in that regard were not improper, but their conduct in appearing in such number in the courtroom, in uniform, could have an intimidating effect on a jury. The trial court could have reduced their number, and it probably should have but didn't. In a close case, such a factor could make a difference. We will not reverse on that basis, however, for two reasons. First, the eyewitness testimony that Defendant shot Officer Beall is such compelling direct evidence that even this display of solidarity added little to it. Second, Defendant's claim is prosecutorial misconduct, and the record fails to demonstrate that the prosecutor had anything to do with these events.
 {¶ 87} Defendant's fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR {¶ 88} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL THROUGH THE STATE'S MISCONDUCT IN VOUCHING FOR TRUTHFULNESS OF WITNESSES AND STATING AN OPINION OF APPELLANT'S GUILT IN CLOSING ARGUMENT."
 {¶ 89} In his final assignment of error alleging prosecutorial misconduct, Defendant claims that the prosecutor improperly expressed his personal opinion about Defendant's guilt.
 {¶ 90} During closing argument the prosecutor stated: ". . . this is not a who done it. We all know who committed each and every criminal charge in this case. This defendant. Identity has been established."
 {¶ 91} Closing arguments must be viewed in their entirety to determine whether the remarks were improper and prejudicial. State v.Ballew, supra. The complained of remark was made by the prosecutor while explaining to the jury why the State had proved its case against Defendant on every charge. Viewed in its proper context, it is clear that this remark was simply a comment upon what the prosecutor believed the evidence presented at trial showed; that Defendant was the perpetrator of all these offenses, which is entirely proper. It is not improper for a prosecutor to express an opinion as to defendant's guilt if that opinion is based upon the evidence presented at trial. State v. Keenan, supra, at 408.
 {¶ 92} Defendant additionally complains that "additional examples of vouching are found at pages 260, 262, and 275 of the trial transcript." Defendant does not identify, however, those examples of "vouching" (presumably for a witness' credibility), nor does he make any separate argument in his brief concerning them. Under those circumstances we will exercise our discretion and disregard this claimed error. App.R. 12(A)(2).
 {¶ 93} Defendant's fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR {¶ 94} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 95} In State v. Sanders, 94 Ohio St.3d 150, 2002-Ohio-350, the Ohio Supreme Court observed:
 {¶ 96} "Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, sets forth the standard for judging ineffective-assistance claims. `When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 687-688, 104 S.Ct. 2064, 80 L.Ed.2d at 693. Furthermore, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id. at 694, 104 S.Ct. At 2068, 80 L.Ed.2d at 698. See also, State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.
 {¶ 97} Strickland charges us to `[apply] a heavy measure of deference to counsel's judgment,' 466 U.S. at 691, 104 S.Ct. At 2066,80 L.Ed.2d at 695, and to `indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' Id. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694."
 {¶ 98} Defendant claims that his trial counsel performed in a deficient manner in several respects. First, Defendant argues that his counsel performed deficiently by failing to object to the numerous alleged instances of prosecutorial misconduct addressed in Defendant's second, third, and fourth assignments of error. As we observed in overruling those claims, in the vast majority of instances the questions the prosecutor posed to his witnesses, and the remarks made by the prosecutor during closing arguments, did not mischaracterize or misstate the evidence, or unfairly appeal to the jury's emotions. Rather, the prosecutor's remarks were an accurate and fair interpretation of the testimony presented. Hence, those remarks were proper and defense counsel's failure to object to them does not constitute deficient performance.
 {¶ 99} Even assuming arguendo that defense counsel performed deficiently by failing to object to some of the unnecessary and highly emotional testimony discussed in the fourth assigned error, given the overwhelming evidence of Defendant's guilt on these offenses, we cannot say that but for defense counsel's failure to object there is a reasonable probability that the outcome of this trial would have been different. No prejudice has been demonstrated.
 {¶ 100} Next, Defendant complains that his counsel performed deficiently by failing to present any argument to support his Crim.R. 29 motion for acquittal. According to Defendant, an argument should have been made with respect to the felonious assault charge pertaining to Officer Smiley that the evidence fails to prove that Defendant caused or attempted to cause physical harm, because he did not try to shoot Officer Smiley. With respect to the felonious assault and child endangerment charges pertaining to Kia Richardson and her daughter, Rickia Woods, Defendant claims that counsel should have argued that the evidence fails to prove that Defendant fired his gun at them.
 {¶ 101} When a Criminal Rule 29 motion for acquittal is made, it is the trial court's responsibility to review the evidence presented and determine whether the motion should be granted. Defense counsel has no duty to supplement his motion with argument, State v. Patterson (Sept. 22, 1998), Franklin App. No. 97-APA12-1682, although that is clearly the preferred practice. Nevertheless, defense counsel's failure to present any argument in support of his Crim.R. 29 motion does not per se constitute unreasonable substandard performance. Moreover, given the overwhelming evidence of Defendant's guilt on these charges, and the applicable law, there is no reasonable probability of a different outcome even if defense counsel had presented the arguments Defendant now claims should have been made in support of the motion for acquittal. No prejudice has been shown.
 {¶ 102} Defendant additionally claims that his counsel performed deficiently because counsel failed to object to evidence that was based upon speculation or admitted without a proper foundation, and counsel's cross-examination of the State's witnesses was insubstantial. We will not address these claims because Defendant has failed to specifically identify those instances of error about which he complains, and has further failed to separately argue those claims in his brief. App.R. 12(A)(2).
 {¶ 103} Lastly, Defendant claims that defense counsel performed deficiently by failing to renew his motion for a change of venue. Such a motion had previously been made before trial and overruled by the trial court. Defendant had sought a change of venue based upon his claim that he could not get a fair and impartial trial due to the intense publicity surrounding this case. R.C. 2901.12. Extensive publicity does not require a change of venue, however, if the jurors indicate that they can set aside any preconceived notions about guilt, and render a fair and impartial verdict based solely upon the evidence presented in court and the law as given by the trial court. State v. Landrum (1991),53 Ohio St.3d 107; State v. Laskey (1970), 21 Ohio St.2d 187. In those circumstances the trial court does not abuse its discretion in overruling a motion for a change of venue. State v. Kassow (1971), 28 Ohio St.2d 141. Ordinarily, determination of whether a fair and impartial jury can be impaneled must wait until after examination of the jurors on voir dire. So it was in this case.
 {¶ 104} An examination of the voir dire proceedings refutes Defendant's claim that he could not get a fair and impartial jury. All of the jurors impaneled indicated that they could set aside anything they saw, heard, or read about this case, and decide Defendant's guilt based solely upon the evidence presented in court. The trial court clearly did not abuse its discretion in overruling Defendant's pretrial motion for a change of venue. As for Defendant's claim that counsel performed deficiently because he failed during the trial to renew his motion for a change of venue, the trial record does not demonstrate that at some point during this trial the jurors became unable to base their decision solely upon the evidence presented. In other words, this record does not demonstrate that a change of venue motion, had it been renewed during the trial, would have had any reasonable possibility of success. Thus, defense counsel did not perform deficiently by failing to make that motion. Ineffective assistance of counsel has not been demonstrated.
 {¶ 105} Defendant's sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR {¶ 106} "THE JURY'S VERDICT WITH RESPECT TO COUNT TWO (THE FELONIOUS ASSAULT) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 EIGHTH ASSIGNMENT OF ERROR {¶ 107} "THE JURY'S VERDICT WITH RESPECT TO COUNT THREE (ENDANGERING CHILDREN) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 NINTH ASSIGNMENT OF ERROR {¶ 108} "THE JURY'S VERDICT WITH RESPECT TO COUNT EIGHT (FELONIOUS ASSAULT UPON SHAWN SMILEY) IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 109} In these assignments of error Defendant argues that the jury's guilty verdicts on count two, felonious assault on Kia Richardson, count three, child endangerment with respect to Rickia Woods, and count eight, felonious assault on Officer Smiley, were not supported by legally sufficient evidence and were against the manifest weight of the evidence.
 {¶ 110} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259:
 {¶ 111} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 112} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. Hufnagle,supra. The proper test to apply to that inquiry is the one set forth inState v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 113} "[T]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 114} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley,
(October 2, 1997), Champaign App. No. 97-CA-03. supra.
 Felonious Assault on Kia Richardson {¶ 115} In count two the jury found Defendant guilty of knowingly causing or attempting to cause physical harm to Kia Richardson by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(2). Defendant argues that the circumstantial evidence presented at trial does not support a conclusion that he fired his gun at Kia Richardson, and therefore committed this offense. We disagree.
 {¶ 116} As we discussed in overruling Defendant's second assignment of error, the circumstantial evidence in this case, when viewed as a whole, is sufficient to demonstrate that Defendant fired his weapon at Richardson. Moreover, Defendant's conduct in pointing a loaded, operable firearm at Richardson, coupled with his threat to shoot her, is sufficient by itself to support his conviction for felonious assault. State v. Green (1991), 58 Ohio St.3d 239.
 {¶ 117} Viewing the evidence presented in this case in a light most favorable to the State, a rational trier of fact could find all of the elements of felonious assault proved beyond a reasonable doubt.
 {¶ 118} Defendant's conviction is supported by legally sufficient evidence. Moreover, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that manifest miscarriage of justice has resulted. Defendant's conviction is not against the manifest weight of the evidence.
 Child Endangering with Respect to Rickia Woods {¶ 119} In count three Defendant was charged with cruelly abusing a child under eighteen years of age. R.C. 2919.22(B)(2). "Abuse" means any act which causes physical or mental injury that harms or threatens to harm the child's welfare. 4 Ohio Jury Instructions (2001), Section 519.22. Defendant argues that his conduct in this case was not sufficient to prove a violation of R.C. 2919.22(B)(2). We disagree.
 {¶ 120} Kia Richardson's four year old daughter, Rickia Woods, was with Richardson, right at her side, when Defendant pulled out a gun, pointed it at Richardson and threatened to shoot her. As Richardson fled down the street away from Defendant, dragging her daughter with her, Defendant fired at them. As a result, the child began crying hysterically and was visibly shaking. Minutes later when Richardson and her daughter once again spotted Defendant in his vehicle, they both dove onto the floor of the police cruiser they were riding in.
 {¶ 121} Viewed in a light most favorable to the State, this evidence is legally sufficient to prove all of the elements of child endangering beyond a reasonable doubt. Furthermore, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has resulted. Defendant's conviction for this offense is not against the manifest weight of the evidence, and is supported by legally sufficient evidence.
 Felonious Assault on Officer Smiley {¶ 122} In count eight the jury found Defendant guilty of knowingly causing or attempting to cause physical harm to Officer Smiley by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(2). Defendant argues that because he did not shoot Officer Smiley, or attempt to do so, the evidence is legally insufficient to prove a violation of R.C. 2903.11(A)(2). We are not persuaded.
 {¶ 123} The evidence demonstrates that Defendant pointed a loaded, operable firearm at Officer Smiley and threatened to kill him by shooting him in the head if Officer Smiley did not comply with Defendant's demands to put down his gun. That conduct is legally sufficient to prove felonious assault in violation of R.C. 2903.11(A)(2).State v. Jackson, 92 Ohio St.3d 436, 440, 2001-Ohio-1266; State v.Green, supra. Moreover, Defendant's conviction for that offense is clearly not against the manifest weight of the evidence.
 {¶ 124} Defendant's seventh, eighth and ninth assignments of error are overruled.
 TENTH ASSIGNMENT OF ERROR {¶ 125} "THE TRIAL COURT ERRED IN FAILING TO MERGE GUN SPECIFICATIONS.
 {¶ 126} Defendant claims, in conclusory fashion, that the trial court erred in failing to merge all of the firearm specifications. Defendant's brief, however, fails to specifically and separately argue this claim of error. Accordingly, we may disregard this claim. App.R. 12(A)(2). However, in the exercise of our discretion, we will address this issue.
 {¶ 127} R.C. 2929.14(D)(1)(b) prohibits imposition of prison terms for more than one firearm specification for felonies that are committed as part of the "same act or transaction." Same act or transaction means a series of continuous acts bound together by time, space and purpose, and directed toward a single objective. State v. Walker (June 30, 2000), Montgomery App. No. 17678; State v. Wills, 69 Ohio St.3d 690,1994-Ohio-417.
 {¶ 128} The trial court divided Defendant's criminal conduct in this case into three separate and distinct transactions, and merged the firearm specifications accordingly. The trial court merged the firearm specifications attached to counts two and three, and imposed one six year term of imprisonment for these offenses, which were based on Defendant's firing his gun at Kia Richardson and her daughter, Rickia Woods, as they fled down the street trying to escape from Defendant. The trial court also imposed one six year term of imprisonment for the firearm specification attached to count four, which was based on Defendant's conduct in failing to stop when police signaled him to do so, and the subsequent police chase of Defendant's vehicle through the streets of Dayton. Finally, the trial court merged the firearm specifications attached to counts five, six, seven, eight and ten, and imposed one six year term of imprisonment for these offenses, which were based on Defendant's conduct in confronting, attempting to disarm, and then assaulting Officers Smiley and Beall after they had stopped Defendant's vehicle.
 {¶ 129} Defendant's conduct in attempting to flee from the police (count four), occurred several minutes after he had threatened to shoot Kia Richardson and fired his gun at her and her daughter (counts two and three). These events involve separate and distinct times, locations, and objectives. They are not part of the same act or transaction for purposes of R.C. 2929.14(D)(1)(b), and the trial court properly refused to merge the firearm specifications relating to these offenses.
 {¶ 130} Although Defendant's conduct in confronting, attempting to disarm, and then assaulting Officers Smiley and Beall (counts five, six, seven, eight and ten) may have been directed toward the same objective as his conduct in attempting to flee from police in his vehicle (count four), to evade capture by the police, these events nevertheless occurred at different times and in different locations. The offense charged in count four was completed before the conduct giving rise to counts five, six, seven, eight, and ten occurred. Under those circumstances we conclude that these events were not part of the same act or transaction for purposes of R.C. 2929.14(D)(1)(b), and hence the trial court properly refused to merge the firearm specifications relating to those offenses.Walker, supra.
 {¶ 131} Defendant's tenth assignment of error is overruled.
 ELEVENTH ASSIGNMENT OF ERROR {¶ 132} "THE CUMULATIVE ERROR COMMITTED AT TRIAL DENIED APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL AND REQUIRES REVERSAL."
 {¶ 133} In his final assignment of error Defendant argues that the cumulative effect of the many errors occurring during the trial, as discussed in his ten previous assignments of error, denied him a fair trial and requires reversal of his convictions.
 {¶ 134} As we observed in overruling Defendant's previous assignments of error, Defendant has failed to demonstrate that any errors occurred in the proceedings of the trial court that may have affected the outcome of those proceedings, or prejudiced his right to a fair trial. The absence of prejudicial error cannot rise to the level of cumulative error. State v Blankenship (1995), 102 Ohio App.3d 534, 557.
 {¶ 135} Defendant's eleventh assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and BROGAN, J., concur.